MARCENARO *v.* BERTOLI.

Where moveables forming part of a succession opened in this State are bequeathed to, or inherited by, a married woman, domiciled, with her husband, in a foreign country, and the wife subsequently dies, the law of the domicil of the spouses, in case of a contest between the survivor and the heirs of the deceased spouse, will govern in determining to whom the property belongs.

By the laws of England legacies to a wife, and residuary personal estate inherited by her, are included under the term *choses in action*; and it is only where they have been reduced into possession by the husband, that they become his property. To affect such a reduction the husband must exercise some act of dominion over the property; the mere intention to reduce them into possession is not enough. To effect a reduction the act must be such as to change the property; it must divest the wife's right, and make that of the husband absolute.

MARCENARO
*v.*
BERTOLI.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. The defendant appealed from a judgment in favor of the plaintiff. In June, 1844, the late Supreme Court pronounced an opinion reversing the judgment of the lower court and rendering one in favor of the defendant as in case of non-suit; but a re-hearing was granted. The final decision on this re-hearing was rendered by the present court. The case was argued by *L. Janin*, for the plaintiff; and *Roselius* and *R. H. Wilde*, for the appellant. The judgment of the court was pronounced by

SLIDELL, J. *Joseph Barabino*, who was domiciled at New Orleans, died there in the month of May, 1834. He left an olographic will, which was duly admitted to probate and ordered to be executed. By this will he bequeathed to his sister, *Anna Barabino*, who at the date of his death was the widow of *Angel Mordella*, the sum of $2,000. A considerable portion of his estate was left undisposed of by this will, which consequently fell by our law to his sister german *Anna*, and his half-brother *Lorenzo Basso*, in the proportion of three-fourths to the former and one-fourth to the latter. In July, 1834, *Anna* contracted marriage at Gibraltar, with *Marcenaro*, the plaintiff, both being domiciled at Gibraltar, where they continued to live till her death, which occurred on the 24th December, 1834. *Marcenaro* still resides there.

In the month of August, 1834, *Marcenaro* and his wife *Anna*, transmitted from Gibraltar a power of attorney to *E. J. Forstall*, a resident of New Orleans and a partner of the house of *E. J. Forstall & Co.*, by which they and each of them constituted him " their and each of their true and lawful attorney," with " authority for each of them, the said constituents, in his and her name, and for his and her use, to recover and receive from the executors of *Barabino*," &c., all sums of money whatsoever due or payable to them by reason of bequests to her by said will, or by reason of any residuary estate and effects to which the said *Anna* might be entitled by the laws of the United States, as the lawful sister of *Barabino*. There was given the usual power to sue, give acquittances in the name of the constituents, to represent them in any court, &c.

In November, 1834, the attorney thus appointed presented, in the name of his constituent *Anna*, a petition to the Court of Probates of New Orleans, in which, after alleging her heirship as sole heir, she prays that the executors of *Barabino* be cited, that they may be ordered to render an account; that she be put into possession of the estate of the deceased, and that all sums of money belonging to it be paid over to her. Upon this petition the Court of Probates, in February, 1835, rendered a decree recognising *Anna* and *Basso* as the only lawful heirs of *Barabino*, in the degrees of relationship above stated; recognising *Forstall* as attorney of *Anna*, she being described in the decree as the wife of *Marcenaro*, and commanding the executors to render an account, and that the estate be divided in conformity to law.

In March, 1835, *Lizardi & Co.*, a commercial house at New Orleans, of which house *Forstall* was a member, received from the executors, for the account of *Anna Mordella*, a sum of $4,625 87 in cash, and a sum of $4,205 in promisso-

MARCENARO
v.
BERTOLI.

ry notes. It appears also that *Anna Mordella*, at the time of her marriage with *Marcenaro*, had two children, issue of her marriage with *Mordella*. These children survived her; one of them resided at Gibraltar, the other was married to *Bertoli*, the present defendant, and was domiciled with him at New Orleans.

In 1836, *Bertoli* presented a petition to the Court of Probates at New Orleans, in which he states the death of *Anna Mordella* intestate, the heirship of the two children, and his marriage with one of them, and prays to be appointed curator of *Anna Mordella's* succession. After the usual formalities of advertisements, and no oppositions being filed, letters of curatorship were granted to *Bertoli*. An inventory was made, comprising certain real estate inherited from *Barabino*, and a sum of $2,040 in cash, which is stated as an amount declared by *Forstall* to be the balance remaining in his hands of a larger amount received by him as the agent of *Anna Mordella*. Soon after the making of this inventory the house of *Lizardi & Co.* paid to *Bertoli*, in his capacity of curator, $2,498 95, taking a receipt in which the sum is stated as a balance of account in favor of the late *Anna Mordella*. *Lizardi & Co.*, on the same day, closed their account-current with *Anna Mordella*, exhibiting the receipts in cash and notes, in March, 1835, from *Barabino's* executors, and charging her with divers remittances and disbursements. The balance of account thus paid by *Lizardi & Co.* to *Bertoli* forms the subject of the present controversy.

We have been thus particular in stating the facts, because their accurate statement is very essential to the due consideration of the plaintiff's rights. *Marcenaro*, in his individual capacity, brought this suit in the year 1840, in the Commercial Court, for the above sum of $2,498 95, against *Bertoli*, in his individual capacity. He bases his right to recover this sum from *Bertoli* upon the law of England, which he contends is and was in force at Gibraltar, and by "reason of which he became entitled as husband, in absolute ownership, to all the personal estate which his said wife might then (the date of her marriage) own, or thereafter acquire, and among others to her share in the estate of the said *Joseph Barabino*, and to the proceeds thereof." The payment by *Lizardi & Co.* to *Bertoli*, in his capacity of curator, he treats as an unlawful payment.

In proceeding to consider the right of the plaintiff to maintain this action, we shall not notice an objection made by the defendant's counsel, that the english laws and jurisprudence, and their prevalence at Gibraltar, have not been sufficiently proved. We shall assume, for the purpose of our present enquiry, that they do exist as the governing law and jurisprudence at Gibraltar; and shall take them to be as we find them in english treatises, the sources of information to which the witnesses and the plaintiff's counsel refer us. And here it is first to be examined how the jurisprudence of England would consider the rights which *Anna Mordella* acquired by the death of her brother *Barabino*, as his legatee and heir. And this examination must be confined to that part of *Barabino's* succession which consisted of moveables; for as to the immovables to which the wife became entitled as heir, *Marcenaro* sets up no right in this action. The moveables then of *Barabino's* succession, after due administration by the executors by the payment of the testator's debts, were to be applied to the payment of the legacy and of the distributive share of *Anna Mordella* as heir. Her right to this payment as legatee, and to this distributive share as heir, was what the english jurisprudence would consider *a chose in action*. By that jurisprudence, marriage is an absolute gift to the husband of all the goods, personal chattels, and estate which the wife was actually and beneficially *possessed*

MARCENARO<br>v.<br>BERTOLI.

of at that time in her own right, and of such other goods and personal chattels as come to her during the marriage. The moment these come into the wife's actual possession they become the husband's absolutely, *jure mariti.*

But the law is different with regard to such of her personal property as is included under the denomination of *choses in action;* a term which includes debts owing to her, arrears of rents, legacies, residuary personal estate, money in the funds, &c. Marriage is only a qualified gift to the husband of his wife's *choses in action,* viz : upon condition that he reduce them into possession during its continuance; for if he happen to die before his wife without having reduced such property into possession, she, and not his personal representatives, will be entitled to it, in her own right, without administering on his estate, or holding such property as assets for his debts. If, on the other hand, the wife die before her husband, his rights with regard to her *choses in action* which he has not reduced into possession during her life-time, are not absolutely destroyed. They do not belong to him as husband; but he is entitled to them as administrator of his wife, and they would be liable as assets for her debts *dum sola.* In suing for them, therefore, he must sue for them not as husband, but only in the character of administrator.

What is to be considered as a reduction into possession of the *choses in action* of the wife during the marriage, has been well settled. The husband must exercise some act of dominion over the fund during the marriage. The mere intention to reduce the wife's *choses in action* into possession is not sufficient. The act, to effect that purpose, must be such as to change the property in them. It must be something to divest the wife's right, and make that of the husband absolute. Such as a judgment recovered by him in an action commenced by him alone, or an award of execution on a judgment recovered by him and his wife, or receipt of the money, or a decree in equity for the payment of the money to him, or to be applied to his use. If stock to which the wife is entitled be transferred to her name, it will not be considered as a reduction into possession by the husband; nor if money be left in the hands of a trustee for the benefit of the wife; nor if the husband actually received the money, but as a trustee or in some fiduciary capacity, and not simply as husband; nor if he and his wife give a power of attorney to a person to receive, but the attorney does not actually receive it during her life. And in equity the rights of the wife meet with even greater favor.

Applying these principles to the case before us, we find no reduction into possession during the wife's life. It is erroneously stated in the former opinion that the wife died in December, 1835. She died in December, 1834, and the money was received by the New Orleans agent in the following March. When *Lizardi & Co.* received this money they seem not to have been aware that she was dead, and received it for her, and so credited it in account. When the petition was filed by *Forstall* in the Court of Probates, it was filed in *her* name ; the prayer was that *she* be put into possession and that the money be paid to *her.* These judicial proceedings, which the husband seems to have adopted, for he refers to them in his petition, point to *her* rights.

It cannot be said that the payment to *Forstall* was a payment to the husband. At the date of this payment his power as to her was revoked by her death. Her husband's authority as husband had also become inoperative, for he ceased, as we have seen, to have any authority as mere husband. He had, as surviving husband, the right, under the jurisprudence which he invokes, to become ad-

MARCENARO
*v.*
BERTOLI.

ministrator; but he had received no grant of letters of administration, and had given no power of attorney in that capacity. The receipt therefore from *Barabino's* executors by *Forstall*, in 1835, was an unlawful receipt; but its restoration to the curator charged with the administration of the wife's succession was lawful.

We will not here discuss the question whether, if the husband had obtained a grant of letters of administration from the proper tribunal at Gibraltar, he would have had a right to act upon the fund here under those letters directly, or after obtaining a judicial recognition of those letters here; nor will we discuss the question whether, if *Marcenaro*, without obtaining letters of administration at Gibraltar, had seasonably applied for letters of administration here, he would have been entitled to them. It suffices to say that he has received no grant of letters at either place, and stands before us claiming as husband only, of *Bertoli* in his individual capacity. But *Bertoli*, during the husband's inaction both here and at Gibraltar, had obtained in the proper court at New Orleans letters of curatorship, by which this fund, as well as the real estate of the wife, was placed under his administration. Letters of administration having been thus granted, if the english law is to govern with regard to the distribution of this fund, the husband's rights are not gone. By that jurisprudence, if the next of kin of the wife have taken out letters of administration and thus have got the *chose in action*, or its proceeds, into their hands, they hold as trustees of the husband, and are thus answerable to him. We do not, however, decide this question in the present case. The counsel for the defendant has contended that this fund is an immovable, because the wife's interest in the succession of her brother, which was opened here, was, as he alleges, an immovable by disposition of our law; that under our Code the distribution of the whole succession of *Anna Mordella*, as situate here, must be in favor of her children. It is unnecessary now to express an opinion upon this point. The plaintiff must, after what has occurred, go to the court where the succession of *Anna Mordella* is under administration, and sue the curator; or if the children of *Anna Mordella* have been put into possession of her estate, he must sue them. The present action cannot be maintained.

For the reasons now expressed the judgment of non-suit rendered by the former Supreme Court in this cause, stands affirmed.